THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, AGUADILLA PART, MODESTO VELÁZQUEZ FLORES, JUDGE, Respondent.

No. O-67-2.     Decided June 28, 1967.

*J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for petitioner.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The prosecuting attorney's information for violation of Art. 8, § 5-801 of the Vehicle and Traffic Law charged Manuel Velázquez Vélez with having driven or operated, on September 17, 1965, a motor vehicle on the public thoroughfare under the influence of intoxicating liquor. The prosecuting attorney "also" alleged that Manuel Velázquez Vélez "refused to submit to the blood or urine analysis to determine the percentage of alcoholic content in his blood, for which reason his driving license was seized."

On March 7, 1966, the court found defendant guilty and ordered him to pay a fine of $100 and the suspension of his license for one year, "and also 3 additional months for having refused to submit to the blood or urine analysis." On March 10, 1966, the court sent the suspended license to the Secretary of Public Works. On November 28, 1966, the court rendered amended judgment providing: "The suspension of the license is retroactive to the date of the seizure, that is, to September 17, 1965." On petition of the People of Puerto Rico we issued certiorari to review the previous actions.

Section 5-802 of Art. 8, Subchapter V of the Vehicle and Traffic Law, Act No. 141 of July 20, 1960, as amended by Act No. 6 of April 30, 1965, punishes every person found

guilty of driving or operating a vehicle under the influence of intoxicating liquor with a fine of not less than one hundred dollars ($100) for the first violation or with imprisonment in jail for a term of not more than one year, or both penalties. Subdivision (d) of said section provides that in the case of a "first *conviction . . . in addition*" to said penalty the court shall decree the suspension of the driver's license for a period of not less than one year nor more than two. The people maintains that the court lacked the power at law to order the retroactivity of the period of suspension of the license to the date it was seized.

As recently as in *People* v. *Superior Court*, 94 P.R.R. 253 (1967), this Court, through Mr. Justice Hernández Matos, passed judgment in the sense that the suspension of the license when a person is found guilty of driving under the influence of intoxicating liquor is part itself of the punishment or penalty imposed, and said suspension of license should be served and counted from the date on which judgment is rendered and not before. In that case we cited *People* v. *Pérez Escobar*, 91 P.R.R. 9 (1964), where we held that the court erred in reckoning the commencement of the suspension of the license as of the date of defendant's release after serving the period in jail imposed on him, under the view that while he was imprisoned the suspension was illegal, and we decided that it should be counted as of the date of conviction.

The year of suspension of the license in the present case should start to run, at law, on March 7, 1966, when judgment was rendered, and it was an error of law of the trial court to decree that the suspension, part of the penalty imposed, be retroactive to the date of seizure, September 17, 1965.

As to the suspension of three months in addition to that of one year, by reason of defendant having refused to

submit to the chemical analysis of his blood or urine, the situation permits other considerations. Section 5-803 of Art. 8 deals with the chemical analysis to which persons guilty of driving under the influence of intoxicating liquor must submit, for which the law presumes they have given their consent. In § 5-804 which follows the lawmaker provided the "Procedure to be followed when arrested person refuses to submit himself to the chemical analysis." This section, as amended by Act No. 94 of June 21, 1961, establishes in detail the action to be taken when the person refuses to submit to the chemical analysis,[1] and requires the immediate delivery of the license.

Said § 5-804 provides in subdivision (c) that at the time of the trial the judge shall order the suspension of the license for a term of not more than 2 years "whenever he shall find from the evidence *that the defendant was not justified in refusing to submit himself to the chemical analysis* to which the preceding section refers, where such be the case." Here, there is a concept of suspension of the license different from that under § 5-802 (d). According to the latter, there can be no suspension without *conviction* for having driven a vehicle under the influence of intoxicating liquor, and, as it has already been said, the suspension is part itself of the penalty imposed. Under § 5-804 (c) the suspension of the license may be imposed even if defendant is acquitted of the offense of driving in state of intoxication, whenever the court concludes from the evidence that he was not justified in refusing to submit himself to the chemical analysis. On the contrary, if he is convicted, he may be exonerated from the suspension of the license because of

---

[1] For the purpose and legislative intent of the amendment of 1961, see the Report of the House Judiciary Committee on House Bill No. 270, in the Journal of Proceedings (House) Vol. 14, T. 3, May 16, 1961, pp. 1250–1251; and the debate in the Senate, May 25, 1961, at pp. 1605–1607.

his refusal to submit himself to the analysis, whenever the court concludes that his refusal was justified.

Neither of the two provisions fixes the date when the suspension period should start to run. The grounds we have stated in support of our holding that the suspension, where it is part itself of the penalty imposed after a conviction, should not be retroactive, are not necessarily binding to make an identical decision nor an unavoidable incompatibility between both is created, in the case of a suspension because of refusal to submit to the analysis.

In *People* v. *Superior Court*, 86 P.R.R. 791 (1962), the Court, through Mr. Justice Belaval, upheld the validity of § 5-804(c) against a strong attack of unconstitutionality on the ground that it inflicted punishment through the immediate seizure of the license by the magistrate when it had not been determined by due process of law whether there was justification for refusing to submit to the analysis.[2]

However, there is an actual fact which may be taken into consideration from the point of view of judicial discretion, which is, that a defendant which has refused to submit himself to the analysis suffers immediately the loss of his right to drive, even though when the trial is held— and experience shows that the coming-and-going of the prosecution may require prolonged time—it may appear from the evidence that the refusal was justified, and even more, that he did not commit the offense of driving while he was drunk. In such a case nothing could compensate defendant for the suspension while awaiting trial.

■ In view of the aforesaid situation, which although we have said is not unconstitutional, could, nevertheless, be onerous and, in the absence of a provision of law on the

---

[2] In *Schmerber* v. *California*, 384 U.S. 757 (1966), the constitutional validity of the analysis was upheld by a court openly divided 5 against 4. Mr. Justice Clark was one of the 5. Even so, the majority extends the constitutional guarantee against unreasonable searches to the analysis.

contrary, it is within the sound judicial discretion to decide in the appropriate cases that the suspension of the license, *by reason of the unjustified refusal to submit to the analysis*, shall be counted as of the date the license was seized for said reason. This view in nowise alters our previous decisions denying such discretion in case of a suspension resulting from defendant's guilt in the commission of the offense.

The judgment rendered on March 7, 1966, as to the suspension of the license for one year counted as of September 17, 1965, is illegal. The suspension of the license for said reason shall start to run as of March 7, 1966. As to the suspension for the additional period of 3 months as a result of the refusal to submit to the analysis, the trial court, in its inherent function of doing justice, could discretionally decide that the same shall start to run as of the date the license was seized for such reason.[3]

Mr. Justice Blanco Lugo delivered a separate opinion in which Mr. Justice Dávila and Mr. Justice Ramírez Bages concur, and partially, Mr. Justice Pérez Pimentel, as to the fact that the appeal has become academic.

—O—

Separate opinion of MR. JUSTICE BLANCO LUGO, with whom
MR. JUSTICE DÁVILA and MR. JUSTICE RAMÍREZ BAGES
concur and, partially, MR. JUSTICE PÉREZ PIMENTEL, as
to the fact that the appeal has become academic.

San Juan, Puerto Rico, June 28, 1967

According to the evidence in the record the respondent court rendered judgment on March 7, 1966, ordering appellant to pay a fine of $100 for the offense of driving a motor

---

[3] As a question of reality, defendant's license has been suspended for 20 months, since September 17, 1965. Reckoning from March 7, 1966, it has been suspended for 12 months.

vehicle under the influence of intoxicating liquor, and suspended his driving license for the term of one year. It also decreed a suspension of three months because defendant refused to let one of the samples to which the law refers be taken for the corresponding analysis. The fine was promptly paid. On November 28, 1966, the trial judge amended the judgment ordering that "the suspension of the license is retroactive and begins to run as of the date of seizure, that is, September 17, 1965."

1. I agree with the Solicitor General in that, irrespective of the decision in *People* v. *Pérez Escobar*, 91 P.R.R. 9 (1964), pursuant to Rule 185 of the Rules of Criminal Procedure,[1] the court lacked power to modify the judgment rendered on March 7, 1966, because more than 90 days had elapsed from the date of its pronouncement. See, judgment of January 27, 1967, in *People* v. *Superior Court and Vélez, Intervener*, C-66-121.

2. As to the suspension of the three additional months because of refusal to submit to the analysis, which *properly is not a part of the judgment in the criminal action*, I find no basis in the law to permit the action of the court. In *People* v. *Otero Valle*, 89 P.R.R. 71 (1963) we said:

"As a result of this legislative study, and for the purpose announced of reconciling the interest of the community with the guarantee of the citizens' rights against possible excesses in the application of the law, Act No. 95 was approved on

---

[1] "(a) *Illegal sentence; drafting of the sentence.* The trial court may correct an illegal sentence at any time. In like manner it may, for a justifiable cause and in furtherance of justice, reduce any sentence within ninety days of its pronouncement, provided that said sentence is not on appeal, or within sixty days after receipt of a mandate upon affirmance of the judgment or dismissal of the appeal, or after receipt of an order denying an application for a writ of certiorari.

"(b) *Clerical mistakes.* Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the Court at any time and after notice is given to the parties, if the Court so orders."

June 29, 1954 (Sp. Sess. Laws, p. 992), the principal innovation of which consisted in introducing the system of chemical analyses to determine the degree of alcoholic intoxication of the drivers. It prescribed the procedure for taking samples, determining the probative effect of the findings of the analyses, and in the event of refusal of a person detained to submit to the required analyses, it provided:

'7. If, after having been arrested and subsequently required to submit himself to such chemical analysis, said person refuses to do so, the analysis shall not be made. The public peace officer who made the arrest shall take said person before a Magistrate, who, after investigating the case and hearing, under oath, the public peace officer, the arrested person, and any other interested person, shall, if there is probable cause, direct that the proper complaint or charges against the arrested person be filed in the Court of First Instance.'

It further provided an administrative procedure for suspension by the Secretary of Public Works of the license of those drivers who refuse to submit to chemical analysis. This procedure was commenced by the remittance by the magistrate to the Secretary of Public Works of a copy of the sworn testimonies given and the latter, 'based on the testimonies given before the Magistrate, shall suspend the driver's license or permit of the arrested person.' The aggrieved party could request a hearing within 60 days in order to determine whether he was justified in refusing to submit to examination.

"The procedure to be followed whenever the arrested person refused to submit to chemical analysis was substantially preserved upon enacting the present Vehicle and Traffic Law of 1960 (No. 141 of July 20, 1960). See, in this connection, § 5-804 (9 L.P.R.A. § 1044). The main changes introduced consisted in: (a) providing what the sworn testimony of the peace officer making the arrest or of the officer then in charge of the station or zone where the arrest is made shall set forth, with particular emphasis on the fact of the request made to the person arrested to submit himself to the analysis, his refusal and the fact that he explained to the latter the consequences of his refusal (suspension or cancellation of the license); (b) providing that a copy of the sworn testimonies shall be delivered to the ar-

114

rested person at his request; and (c) *eliminating the procedure before the Secretary of Public Works for suspension of the license as a result of the refusal to submit himself to examination, and transferring this power to the court taking cognizance of the violation for driving a motor vehicle while intoxicated.* As to the latter particular, it is well to state that the bill which finally became Act No. 141 (substitute of S.B. 304) provided in § 5-805 for the administrative procedure for suspending the license whenever the operator refused to submit himself to examination, and which as a whole was very similar to the former procedure established in 1954. The bill stood as drawn up until at the last stage of the debate in the House of Representatives it was proposed on June 22, 1960, that *the administrative hearing before the Secretary of Public Works* be eliminated *and that it be transferred to the court taking cognizance of the violation.* Journal of Proceedings 2227 (1960).

"The inference clearly to be drawn is that they are parallel, separate proceedings: one, of the exclusive competence of the judicial sphere, for which compliance is required with the provisions on criminal prosecution, and the other, of a purely administrative nature, which does not commence with the filing of the information. In *People* v. *Superior Court,* 86 P.R.R. 791 (1962), we said: 'It concerns two distinct situations of fact which must be established with different facts; the first one refers to the commission of a public offense, the second, to the administrative provision of a license issued by the State.' "

As aforestated, this is a purely administrative proceeding to which no provision authorizing the court to amend its "sentences" is applicable. Furthermore, as in the present case what was amended was the "sentence" the determination on retroactivity could only refer to the term of one year which was part of the penalty.

Finally, I notice that the question has become academic, for even though the suspensions of the license be deducted from the date they were decreed on March 7, 1966, at this date the term of one year, which is part of the sentence in

the criminal case, as well as that of three months in the administrative proceeding, have already elapsed.

The appeal should be dismissed as academic.